IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN WILEY PRICE (01)<br>    a.k.a. John Wiley Price III<br>KATHY LOUISE NEALY (02)<br>DAPHENY ELAINE FAIN (03)<br>CHRISTIAN LLOYD CAMPBELL (04) | 3:14-CR-293-M<br><br>ECF |

GOVERNMENT'S RESPONSE TO DEFENDANT NEALY'S DISCOVERY NOTICE

The government submits this Response to defendant Kathy Louise Nealy's Notice Regarding Discovery Issues (dkt. 235).

1.  **Nealy's complaints regarding searches in Summation would not be solved by production of the Grand Jury subpoenas.**

Nealy argues that she needs the grand jury subpoenas to determine whether her Summation searches are producing responsive documents. (Notice at 2.) She posits that "[i]f the searches are not producing the responsive documents, it is not possible to determine whether the search is simply not being done well or whether the documents are not in the database." *Id.* As an example of her troubles, Nealy states that it is "not clear whether there are internal emails between company representatives about these proposals that do not include Ms. Nealy in the email chain." *Id.*

As an initial matter, relating to Nealy's specific complaint, the government advised defense counsel on March 21, 2016, that the discovery material for each

company should contain internal emails about the projects even if Nealy was not included in the email.

That said, Nealy has access to information that will allow her to determine the universe of material produced by each subpoenaed entity. Attached hereto under seal[1] as Exhibits 1 and 2 are indexes provided to defense counsel identifying the source of discovery material. Exhibit 1 is titled "GE location index." As explained to defense counsel, the government identified certain records from the material obtained via the search warrants, and then Bates labeled them "GE" with a sequential number. The GE documents are more commonly referred to as "hot docs" because they are the documents expected to be used in the government's case-in-chief. Exhibit 1 identifies each search location by the range of documents found from that location. For instance, documents marked with Bates labels in the range GE 0520 – 0712 were found at Dallas County's offices.

The government has provided similar information regarding the evidence obtained through grand jury subpoenas. Exhibit 2 covers certain government productions that included the material obtained via subpoena.[2] Each production to the government was marked with a Bates label in the following format: SBP-1A-[number]. For instance, if

---

[1] The Exhibits indexes are filed under seal because they deal with grand jury matters.

[2] Exhibit 2, as provided here, is updated from a prior index of subpoenaed material produced to the defense. The original version of Exhibit 2 did not include the third column, which identifies the particular account number. For instance, the original version identified SBP-1A-002 as "Lone Star Bank/Amegy" without the third column that provided that it covers records relating to an account ending in x2728. The updated version of index, attached hereto as Exhibit 2, makes it easier on defense counsel to identify particular records by Bates label within the government's discovery productions. This index is an abbreviated list of productions and is not intended to be a list of subpoenas.

Nealy was interested in reviewing Business H's subpoena production, the index identifies the following Bates labels: SBP-1A-168; SBP-1A-486; SBP-1A-562; and Main-1A-235. Review of the materials within those productions would allow Nealy to identify internal, Business H emails discussing pursuit of the FTZ status. Put another way, Nealy's analogy to "10 banker boxes" (Notice at 2) ignores the government's Bates labeled production.

Further, the premise of Nealy's argument is mistaken. Nealy's difficulties in determining the accuracy of her searches in Summation are not tied to the grand jury subpoenas because the subpoenas would not tell her if her search returned all relevant documents. Indeed, simply searching the above-referenced Bates labels concerning Business H would not return all records related to the Business H-specific charges in the indictment. For instance, among other places, there were numerous records relating to Business H seized from Nealy's business or residence that are relevant to the Business H matter. Nothing in the grand jury subpoenas would identify that. Furthermore, even if a grand jury subpoena requested certain documents, that does not mean the documents actually existed for the company to produce or that the documents existed in the portion of the material that the defendant is searching. The only way to conclusively test the accuracy of the Summation search engine would be for the Defense to manually examine a small portion of the provided discovery, find an email meeting the search criteria, and see whether or not the search engine was pulling up that email.[3]

---

[3] Some of Nealy's difficulties may simply be tied to the defense team's selection of Summation as the document database. (*See, e.g.*, Notice at 3 (discussing "difficult and very time consuming" searches).) The Court is aware that the government was not consulted regarding the defendants' decision to select

**2.  Nealy has failed to justify access to all grand jury subpoenas.**

Nealy also wants all grand jury subpoenas to avoid singling out certain entities and thus disclosing some aspect of defense strategy.  (Notice at 2 n.1.)  Nealy contends that if she asks the government whether certain items are contained in the discovery material, that would reveal the subjects she is focused on in defense.  (*Id.*)  Nealy further wants access to all grand jury subpoenas in order to determine whether it is necessary to subpoena more material without the government's knowledge.  (*Id.*)

None of Nealy's complaints have merit.  First, Nealy's assertion that grand jury secrecy should be breached so that she may maintain a covert defense until trial is questionable.[4]  "The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played."  *Williams v. Florida,* 399 U.S. 78, 82 (1970).  Nealy (and the other defendants) are obligated to produce reciprocal discovery to the government under Rule 16, which includes an obligation to produce material Nealy intends to use at trial.  If Nealy subpoenas additional information for trial using a Rule 17 trial subpoena, she is obligated to promptly share it with the prosecution.  The few weeks of secrecy she might obtain between the service of the subpoena and the return of the information hardly seem to justify the breach of the grand jury's secrecy.  And, in any event, Nealy can review the

---

Summation over Concordance as their discovery database program.  That selection has limited the government's ability to assist in such matters as the government has access and support for Concordance, but not Summation.

[4]  The government is also entitled to same attorney-client and attorney work-product privileges as Nealy.  Defendant Nealy fails to explain why she should be given access to all subpoenas prepared by government counsel to determine what subject matters were of interest to them while hiding behind the same privileges prevent any possible disclosure of the subjects in which she is interested.

subpoena material—broken down in the government's index—to determine where she believes additional records are necessary from any of the subpoenaed entities.

Moreover, Nealy fails to explain why her desire for secrecy should trump the grand jury's secrecy. Even though the concerns regarding grand jury secrecy are lower once an indictment has been returned, the requesting party must still show a "particularized need" for disclosure that trumps the importance of continued secrecy. *See Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 219-222 (1979); Fed. R. Crim. P. 6(e)(3)(E)(i). Nealy has not made that showing here. Courts have rejected similar motions for disclosure, recognizing that disclosure of grand jury subpoenas reveals "the substance or essence of the grand jury's investigation or deliberations." *United States v. Diaz*, 236 F.R.D. 470, 476 (N.D. Cal. 2006); *United States v. Larson*, 2012 WL 4112026, *6 (2012). Nealy's omnibus request for all grand jury subpoenas is definitely not a "particularized need" for material. Nor has Nealy established why the need for all grand jury subpoenas outweighs the significant and legitimate concerns regarding the secrecy of the grand jury process. Indeed, Nealy's argument would render Rules 6(e)(6) and 6(e)(3)(E)(ii) nullities because all subpoenas would need to be disclosed without any showing of misconduct. Defendants would be free to breach grand jury secrecy and attack all future grand jury proceedings without first meeting the threshold of Rule 6(e)(3)(E)(ii). *Douglas Oil* at 222 (Court's must consider the possible effect on future grand juries).

### 3. The government's indexes allow Nealy to identify the "discrete productions" of bank records.

Nealy's final complaint is that she has "not been able to retrieve from Summation a discrete production of the various bank accounts." (Notice at 4).  However, the government has provided indexes to its discovery productions that allow defense counsel to make their own "discrete productions" if they want.  Just as with the records of Business H, discussed above, Nealy could examine the bank records for City Bank Account ending in 6372 by reviewing the index (Exh. 2) and identifying records marked with Bates labels SBP-1A-052, SBP-1A-088, SBP-1A-089, SBP-1A-090, and SBP-1A-091.  Counsel could limit her computer searches to those records or simply review them individually.

## Conclusion

None of Nealy's complaints regarding the discovery process have merit.  For the foregoing reasons, the Court should take no action on Nealy's complaints.  Grand jury secrecy should be maintained unless and until Nealy meets her burdens of proof and narrows her requests.

Respectfully submitted,

JOHN R. PARKER
UNITED STATES ATTORNEY

s/ *Walt M. Junker*

Walt M. Junker
Assistant United States Attorney
Texas State Bar Number 24038115
1100 Commerce Street, Suite 300
Dallas, Texas 75242
Telephone:   (214) 659-8600
Facsimile:   (214) 659-8805
walt.junker@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2016, correct copies of this document were served on counsel of record by electronically filing the pleading with the clerk of court for the U.S. District Court, Northern District of Texas using the ECF system.

s/ *Walt M. Junker*

Walt M. Junker
Assistant United States Attorney