IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Cause No. 3:14-CR-293-M |
| | § | ECF |
| JOHN WILEY PRICE, | § | |
| KATHY LOUISE NEALY, and | § | |
| DAPHENY ELAINE FAIN | § | |

## DEFENDANTS' MOTION FOR CONTINUANCE

*Shirley Baccus-Lobel*
Shirley Baccus-Lobel
Law Office of Shirley Baccus-Lobel, PC
8350 Meadow Road, Suite 186
Dallas, Texas 75231
214.220.8460; 214.987.3169 (f)
sbl@lobellaw.com
Attorney for John Price

*Cheryl Brown Wattley*
Cheryl Brown Wattley
Law Office of Cheryl B. Wattley
3737 Atlanta Street
Dallas, Texas 75215
214.882.0855
cheryl.brown.wattley@gmail.com
Attorney for Kathy Nealy

*Thomas W. Mills, Jr.*
Mills & Williams
5910 N. Central Expressway, St. 900
Dallas, Texas 75206-5141
214.265.9265; 214.363.3167 (f)
tmills@millsandwilliams.com
Attorney for Dapheny Fain

*Chris Monroe Knox*
Law Office of Chris Knox
900 Jackson St., Suite 650
Dallas, Texas 75202
214.741.7474; 214.747.7711 (f)
chrisknox@knoxcriminaldefense.com
Attorney for John Price

*Russell Wilson, II*
Law Office of Russell Wilson, II
1910 Pacific Ave., Suite 15100
Dallas, Texas 75201
469.573.0211
Attyrwilson@msn.com
Attorney for Kathy Nealy

*Marlo P. Cadeddu*
Law Office of Marlo P. Cadeddu
3232 McKinney Ave., Suite 700
Dallas, Texas 75204
214.220.9000; 214.744.3015 (f)
mc@marlocadeddu.com
Attorney for Dapheny Fain

## TABLE OF CONTENTS

Page

I.   BACKGROUND                                                          1

II.  DISCOVERY CHRONOLOGY                                               6

III. THE DEFENDANTS HAVE EXERCISED DUE DILIGENCE. ANY DELAY
IN DISCOVERY ACCESSABILITY IS NOT ATTRIBUTABLE TO THEIR
ACTIONS OR INACTION. RATHER, DELAY IS ATTRIBUTABLE
PRIMARILY TO THE DEMANDS OF THE STAGGERING VOLUME OF
DISCOVERY. CONTINUANCE OF THE TRIAL DATE IS NECESSARY IN
ORDER TO AFFORD TO THE DEFENDANTS AN ADEQUATE
OPPORTUNITY FOR REVIEW OF THE DISCOVERY AND IN ORDER TO
PROVIDE THEM WITH THE EFFECTIVE ASSISTANCE OF COUNSEL, THE
DUE PROCESS OF LAW TO WHICH THEY ARE ENTITLED, AND A FAIR
TRIAL.                                                                  16

IV.  CONCLUSION                                                         18

V.   CERTIFICATE OF CONFERENCE                                          19

VI.  CERTIFICATE OF SERVICE                                             20

## ATTACHMENTS

1.   Approval of request for continuance, Defendant Price

2.   Approval of request for continuance, Defendant Nealy

3.   Approval of request for continuance, Defendant Fain

4.   Discovery Update

5.   Chart, Discovery Productions and Accessibility, Updated

## AUTHORITIES

Page

Amendment V, U.S. Constitution                          16,18

Amendment VI, U.S. Constitution                        16, 17, 18

*Wardius v. Oregon,* 412 U.S. 470 (1973)                   18

18 U. S. C. 3161(h)(7)(A) and (B)(i)(ii) and (iv)          18

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Cause No. 3:14-CR-293-M |
| | § | ECF |
| JOHN WILEY PRICE, | § | |
| KATHY LOUISE NEALY, and | § | |
| DAPHENY ELAINE FAIN | § | |

DEFENDANTS' MOTION FOR CONTINUANCE
(With Supporting Memorandum)

Defendants PRICE, NEALY, AND FAIN move this Court to grant a further

continuance of the trial in order to provide the adequate opportunity for discovery

review which is necessary to informed investigation and trial preparation, and in

order to assure these Defendants receive the effective assistance of counsel, the due

process of law to which they are entitled, and a fair trial; in support of this motion

the Defendants submit the following:

I.      BACKGROUND

A.      On July 23, 2014, an indictment was filed which claims that Defendants Price

and Nealy conspired [18 U.S.C. 371] to violate 18 U.S.C. 666 (count 1, indictment

at pages 11-83) and committed mail fraud [18 U.S.C. 1341 and 1346] (counts 2-7,

indictment at pages 84-86). In addition, the indictment claims there existed a

conspiracy to obstruct the IRS, in violation of 18 U.S.C. 371 (count 8, indictment

at pages 87-100), an allegation brought against Defendants Price, Nealy, and Fain; further, the government lodges against Defendant Price claims that false tax returns were submitted for tax years 2007, 2008 and 2009, in violation of 26 U.S.C. 7206(1) (counts 9-11, indictment at page 101), and the government lodges against Defendant Nealy a claim of attempt (October 2003 through June 2011) to defeat payment of tax for calendar tax years 2002-2009, in violation of 26 U.S.C. 7201 (count 12, indictment at pages 102-103).   Finally, the government asserts that Defendant Fain made a purportedly false statement to the FBI on June 27, 2011, in violation of 18 U.S.C. 1001 (count 13, indictment at page 104). Pursuant to 18 U.S.C. 981(a)(1)(C) and 28 U.S.C. 2461 (c), the indictment seeks forfeiture of proceeds attributable to any violations, in the event the prosecution achieves any convictions on Counts 1-7 (indictment at pages 105-106; defendants Price and Nealy).[1]

B.     The 107-page indictment covers a 10 ½ year time period alleged to have concluded nearly 5 years ago ("in or about January 2001 and continuing through on or about June 27, 2011").   Search warrants were executed with respect to these Defendants on June 27, 2011, and the investigation preceded these warrants.

---

[1] A fourth defendant, Christian Campbell, is also named in the indictment's forfeiture notice. He was charged only in count 1 and has entered a plea of guilty to that count (Docs. 120, 122, 124, 125, 126).

C.      Originally, trial was set two months after return of the indictment (September 29, 2014). This was prior (essentially) to the onset of the highly-prolonged discovery process which has occurred in this case. The government prepared and submitted, and the defense joined, a motion to continue and to declare the case complex (Doc. 34).  Based upon the multiple factual allegations of the indictment and its complexity, as well as its 10½-year time span and the anticipated volume of discovery, this Court found the case was complex, granted the joint motion, and continued the trial to January 19, 2016 (Doc. 36).

D.      Thereafter (in October 2015), due to the volume and pace of discovery, the defendants filed an unopposed motion for continuance. Discovery production was incomplete at that time.  Moreover, as discussed more fully below, the defense at that time had no access to the discovery productions provided in Concordance [LexisNexis discovery management software]. The Concordance productions are essentially all of the discovery which is not audio visual - that is to say, essentially all of the documents in the case.[2] Although the government did not oppose the motion for continuance, it did object to a 12-monthcontinuance.  Doc.181 at 1, 3.

---

[2] Productions which are neither audio/video or document production in Concordance: the government's first production in September 2014 in compliance with the Court's order [Doc. 32 at 2] to commence discovery production prior to September 12, 2014 (total estimated volume: 24 gigabytes [GBs]); the government's Production 14 consisting of valuables and items too bulky to scan and produce in an e-format; and pictures. The total and incomplete production volume to date is 7.5 terabyte + nearly 4 terabyte of audio visual material.

The Court scheduled the trial for September 6, 2016. Doc. 183. At that time, both the parties and the Court anticipated that discovery production soon would be complete and fully accessible to the Defendants. As the Chronology (Part II) demonstrates, however, this expectation was not realized.

E.     To date there have been **38** productions of discovery in this case. The processing of discovery remains incomplete, and a significant portion of the discovery became accessible to the defense only recently. The parties have previously made the Court aware of problems with the discovery productions, and this motion will serve to further update the Court. See, *e.g.,* Attachments 4 (Discovery Update) and 5 (Updated Chart of Productions), Doc. 173 at 9-18, and previous discovery updates submitted by the parties.

F.     When the previous continuance motion was submitted, the defense believed and shared with the Court its expectation that the discovery had been (for the most part) recently completed (as of September 15, 2015).  Doc. 173 at 9.[3] The trial setting of September 6, 2016 afforded approximately one year from that date. However, the defense expectation that the discovery process was essentially complete as of September 15th has proved to be a far cry from reality. The

---

[3] The defense recognized there would be additional productions (including, as the Court noted, witness statements and grand jury testimony, Doc. 183 at 4) but did not know that this would include substantial data the government had already acquired by seizure and subpoena and had possessed for some time. Doc. 173 at 9, n. 3.

prosecution also believed completion of the process was imminent [prosecution's October 12, 2015 discovery update to Court at 2]. The previous motion for continuance was filed (Doc. 173, October 14, 2015) and this Court's order was entered (Doc. 183, October 29, 2015) at about the time the Discovery Coordinator (the Federal Public Defender's Office, hereinafter "PD") was able to begin processing the government's productions of discovery but well before any of the Concordance document discovery could be accessed by the defense.

G.    Over a lengthy period of time, numerous problems were encountered with respect to the discovery productions, including compatibility between production load files and the litigation software used for processing the discovery.  But for the diligence, patience and skill of the PD's office, it is possible that there would be no finish line for the discovery production. At every turn, this already-overburdened office confronted and overcame difficulties. The reality is that neither the PD nor the parties, including the government, fully appreciated and anticipated the enormity of the task involved in dealing with this volume of material. Substantial issues remain and although a time projection has been made, past experience is that unforeseen problems arise and fixes are not always as quick as hoped.

## II.   DISCOVERY CHRONOLOGY

A. ***Summary***:  Four categories of discovery have been produced by the government in this case: the majority of the materials are documents (including emails) and video/audio recordings. The government obtained these by subpoena, execution of search warrants, voluntary productions, and other methods.

1.  This Chronology addresses the document productions provided by the government in Concordance load files (for forensic processing). That processing began in October 2015 and is incomplete at this time. Training (of counsel) for use of the system was provided in late November and early December 2015. The PD's office continues to provide assistance to counsel on an as-needed basis.

Currently, there are roughly 7.5 TBs of this data on the PD's server,[4] some of which as a practical matter is not yet accessible by the defense.

In January 2016, there were 1.2 TBs of data on the PD's server; in February, 3.7 TBs.

There also have been numerous productions of audio/video material, including more than 3.5 TBs of video footage from cameras trained on Mr.

---

[4] We cannot yet reliably estimate the volume of unusable data (*e.g.,* operating programs, etc.) in the 7.5 TBs, but that volume can be estimated once the processing of the discovery is completed.

Price's home for over a year, and video footage of Ms. Fain's business for a lesser period; recordings of Commissioners' Court proceedings for a decade; and other audio/video material.

2.  Fitting in neither category are seized bulky material and valuables which could not be scanned; as well as images (pictures).

3.  Attachment 5, which updates the discovery chart previously provided to the Court [Doc. 173-4], details the productions received thus far.  This updated discovery chart provides not only the production dates but also when each production became accessible by the defense. In many instances, the data became available to the defense long after the production date, and much of it only recently, while some material – which will most likely prove to be pertinent – still is not accessible by the Defendants in a usable format. This delay between production of discovery and accessibility of the discovery is due to the time required for processing and also is attributable in several instances to the condition of material received for processing by the PD.[5]

---

[5] This includes improperly coded load files, sometimes referred to as "corrupted" files, meaning only that for whatever reason the load files were not usable. When this occurs, either new load files must be produced by the government or the PD's office must craft a solution, which in several instances was the use of native files in lieu of load files.

4.  The previous continuance motion was submitted just as the PD's Office began to process the government's productions of discovery and in anticipation that the discovery would be fully loaded and accessible by November 2015.

5.  At this time, outstanding issues remain. The PD and the parties continue to work to resolve these: completion of the ongoing processing of Production 8 (the digital storage devices that were seized in this case, of which many have yet to be processed); determination whether the problems with Production 4 can be "fixed" in order to avoid the further delay which production of new load files would entail; accurate source identification of the material produced in discovery; and document number identifiers.  Once these final issues are resolved, the goal of a searchable and complete body of the digitalized discovery which is exportable with sources identified should then be available.  The PD's Office has worked tirelessly and against considerable odds to deliver a useable product, and the government has worked with the PD to help resolve certain of the issues which have arisen. Counsel for the Defendants also have worked diligently to achieve this goal.

6.  We cannot give the Court a definite time frame, but the PD's office hopes to achieve a complete and searchable body of the digitalized discovery from

which items are exportable and for which items are accurately numbered, with sources identified within 2-6 weeks.

7.  Although the parties have provided the Court with some discovery updates from time to time, the evolution of the discovery productions and the problems encountered are set forth below and in Attachments 4 and 5 in order to provide the Court with a more complete picture of the situation.

B.   **September 2014:** The prosecution provides 24 gigabyte of material, described as items seized from these Defendants pursuant to warrant.

C.   **The next several months:**   Data is compiled (that is, best estimates of volume, format, etc.), bids are solicited for the considerable forensic processing and hosting needs of this case, and bids are received and evaluated. During this period, the prosecution provides a number of document productions in Concordance format.

D.   **April 2015:** Due to the substantial costs revealed by the bids ultimately received, the Court seeks an alternative solution and approaches the Federal Public Defender of the Northern District of Texas [PD] about the possibility of that office performing the forensic processing and hosting the document discovery.

E.     **May 2015:** The PD agrees to serve as the coordinating discovery attorney and on May 12th is appointed. Doc. 118. As the PD subsequently observes, this case involves multiple terabytes of discovery and is much larger than any case he has previously seen in the Northern District of Texas. This undertaking is a pilot project and is expected to be used in future Criminal Justice Act cases involving voluminous document production here and elsewhere, in order to minimize the substantial costs which would otherwise accrue as a consequence of essential forensic needs. The PD's cooperation and assistance has resulted in savings of nearly $1,000,000 in this case.

F.     **July 2015**:   The PD receives final funding approval for the project. At the Defender Service's direction, particular software is selected based on the Service's contractual obligations. The PD's office then begins implementation of this pilot project, including ordering the equipment necessary for processing and hosting the discovery.

G.     **August 2015:** The PD's office begins receiving the equipment. This is a large-scale project involving multiple vendors.

 H.     **September 2015:** The PD's office has not yet begun to process and host the government's productions of discovery. The PD receives the final component of the server and schedules computer representatives to configure the server, after which software representatives remotely install and configure their programs on the server. The PD updates the Court and counsel on the project's progress.

I.      **October 2015:**  The PD's office begins the process of uploading document discovery to the server. The PD's office advises the Court and counsel that it expects to upload to the server all government discovery productions by the end of November. Given the scheduled trial date in January 2016, a motion for continuance must be sought, and it is granted (the trial is rescheduled to September 6, 2016).

J.      **November 2015:**  The training necessary for defense counsel to be able to use the litigation software is deferred by the PD to later in November and early December because some of the load files it received had incorrect pathways which created multiple problems in importation, making it impossible to search the documents. The PD also advises the Court that due to technical difficulties with the load files, the government has reproduced Production 7, 7A, and 5_3.  The PD also advises that Productions 1, 4A, 10, 16, 18 and 19 have been uploaded. The PD also addresses problems with respect to exportation of files.

K.      **December 2015:**  The defense is advised that Production 5_1 has been processed and is available and that load file issues remain with respect to Productions 5_2 and 7. The PD and the government work to address these issues.

L.      **January 2016:**  The defense is advised that Production 4 has been loaded [problems later surface which render that production essentially unusable] and that the government has been notified concerning problems with Production 7. Considerable time and attention is devoted to problems with Production 5_3, by the

PD, the government, the software provider, and counsel for the Defendants. Discovery updates are provided to the Court.

The litigation software provider examines the load file issues and confirms that there are many errors and that some productions are not usable. In an effort to fix the problems associated with the load files, the PD's office begins to upload native files in lieu of Concordance load files for certain productions.[6]

The PD also identifies serious problems with document identifiers and the government-produced indices, in particular the 186,000 line Excel spreadsheet that serves as the Production 4 Index.   The spreadsheet includes documents with identifiers which are not in the load files, and there are load files which do not include the document identifiers referenced in the spreadsheet.[7]

The PD in particular, and also the parties, devote considerable time to efforts to fix serious document identifier problems, and certain of those efforts are continuing. The PD's office also devotes extraordinary time and effort to creation of a cross-referenced index to address document identifier problems but is not able to do so for

---

[6] Native files are original format material.  For example, if a company produced documents in response to a subpoena, that production of documents constitutes a native file.  Ordinarily, these are bates-stamped. Load files, on the other hand, are files which have been processed (in this case, by the government using Concordance software).

[7] Unlike most other productions, Production 4 was provided with an extensive index but it was found by the PD to be unusable.

Production 4. Despite these problems, the PD expects all productions (except Production 8) to be uploaded and available in January.

M.    **February 2016:**    Processing Production 8 continues [substantially more remains to be loaded]. At this time, the volume of data on the server is 3.7 TBs.

It is determined that the problems associated with Production 5_3 [absence of the metadata which would permit the connections necessary for complete email conversations] are most likely the result of how the files were produced.

The PD advises the government of its decision to process non-native image files and to then OCR[8] [convert the images to machine encoded text] as many files as possible in order to save time with respect to Productions 4 and 5_1.

The PD and the government continue to address document identifier problems.

The PD advises defense counsel that the following productions are completed: 1, 4A, 5_2, 5_3 [files processed; metadata issue continues to be addressed by PD and government], 7, 7A, 10, 13, 14, 16, 18, 19 [loaded in the old case created prior to the change to use of native files *vis-à-vis* Concordance load files and to be added eventually to the new case]; in addition, a majority of the documents have been processed but a small portion of non-native files must be added to these files:  4 and 5_1; and a substantial amount from Production 8 must be added. The PD has not yet

---

[8] OCR stands for Optical Character Recognition.

received the updated Production 19 [the "filtered" documents removed from the original production], has just received 7B, and is expecting a new production, 5_5.

N.   **March 2016:**  The PD advises defense counsel that Productions 7B, 5_5, 5_6, 19 and 19A are available, and that small portions of Productions 4 and 5_2 for which there were no native files must be added.

Processing Production 8 continues and the PD estimates the discovery will be completed by the end of the month.

The PD and the software provider fix the problem defense counsel experience with the inordinate amount of time required to conduct a search. The clean-up of the database together with the re-indexing accomplished by the PD dramatically reduce search length.

O.   **April 2016:**  The PD updates defense counsel: those portions of Productions 5_1 and 5_3 that did not include native files have been added to the server; non-native portions of Production 4 will be addressed next; Production 8 will then be finished and the data base will be complete, hopefully by April.  The PD advises that all productions received from the government have been loaded and are available, except for Production 8. The parties and the government, and particularly the PD, continue to work on the indexing and document number identifier problems. The PD advises

14

that new Productions 5_7 and 23 are now available. The PD provides the defense with updated indices.

P.   **May 2016:**   The digital storage devices in Production 8 are still being processed.  To date, approximately 64 of these devices have been processed. Those 64 devices, cumulatively, contain 1.4 million files.  Since many remaining devices are not yet processed, Production 8 alone will yield substantially more than 1.4 million files.

The PD and the parties continue to address indexing, sourcing, and document identifier problems.

Particularly with respect to Production 4, there are still a number of issues that must be resolved.  First, the Bates identifiers need to be added to all the files included in this production.  Second, questions remain regarding the GE-labeled files. Specifically, how the government created the GEs is unclear and the various indices related to the GE files are inconsistent regarding the source location of the material. Also, the Production 4 Index attributes certain GE files to sets of documents containing Bates prefixes that are not otherwise included in the Production 4 Index.

Q.   There is no contention, nor could there be, that the Defendants are in any way responsible for either delay or problems associated with the production and accessibility of the document discovery. They have exercised due diligence with

15

respect to the discovery and, as problems have arisen, have assisted where possible.

They certainly have not created any of the problems encountered. Respectfully, if

there is a culprit, it is volume and the gargantuan tasks that volume has required.

III. THE DEFENDANTS HAVE EXERCISED DUE DILIGENCE. DELAY IN
DISCOVERY ACCESSABILITY IS NOT ATTRIBUTABLE TO THEIR
ACTIONS OR INACTION. RATHER, DELAY IS ATTRIBUTABLE PRIMARILY
TO THE DEMANDS OF THE STAGGERING VOLUME OF DISCOVERY.
CONTINUANCE OF THE TRIAL DATE IS NECESSARY IN ORDER TO
AFFORD THE DEFENDANTS THE ADEQUATE OPPORTUNITY FOR
REVIEW OF THE DISCOVERY AND IN ORDER TO PROVIDE THEM WITH
THE EFFECTIVE ASSISTANCE OF COUNSEL, THE DUE PROCESS OF LAW
TO WHICH THEY ARE ENTITLED, AND A FAIR TRIAL.

A.      Ordinarily, at least with respect to those cases which proceed to trial,[9] the initial

phase of a federal criminal case entails the receipt and review of the discovery.

The defendant's **informed** and independent investigation follows and relies in no

small measure upon the information gleaned from review of the discovery. Once

well versed with respect to case details, the appropriate motions are determined,

after which preparation for trial begins.  This systematic approach has not yet

occurred in this case, however, due to the impossibility of doing so. Mindful of the

Court's understandable directive to begin examination of discovery material prior to

---

[9] Of course, only a minuscule percentage of federal cases now go to trial.  According to the U.S.
Sentencing Commission's most recent Sourcebook (2015), only 2.5 % of criminal cases in the
Northern District of Texas proceed to trial; the figure nationally is 2.9%. *Federal Sentencing
Statistics 2015*, Table 2, Fifth Circuit.

16

receipt of the whole body of material, all counsel followed that directive and proceeded with diligence to examine accessible documentary materials provided in discovery. That means of course that searches to date have been made of less than the whole body of discovery and often without sufficient data to determine document identification and source. In many instances, defense discovery searches will need to be repeated (once there is a whole data base, which there is not as of the filing of this motion, and once document and source identification problems have been fixed).

B.     This motion is necessary because the discovery processing is incomplete, and much of the discovery became accessible to the defense only recently. ***And,*** the sources of files in many instances are unknown to the defense and, to a significant extent, unknowable – at least at present. The PD and all parties agree that these are critical issues which must be resolved and are working to accomplish precisely that. More to the point, however, these Defendants are not responsible for either the pace or the condition of the discovery and have in fact proceeded to examine the discovery, as directed by the Court.

C.     This motion for continuance is not brought for purpose of delay but, rather, in order to provide these Defendants with the effective assistance of counsel secured by the 6th Amendment. Effective assistance of counsel cannot be achieved unless these Defendants receive (1) full and comprehensible access to the discovery and (2) an

adequate opportunity to review the materials provided. Without this, the adversarial balance required by the due process of law guaranteed by the Fifth Amendment cannot be achieved. *E.g., Wardius v. Oregon,* 412 U.S. 470 (1973). The ability to navigate the discovery material is crucial to the ability to provide effective assistance, and no meaningful investigation can occur without it.  These Defendants are being asked to defend almost every day of their lives for more than a decade, tasks that must be undertaken in light of remote events for which an understanding of context is essential. The circumstances recounted herein provide a substantial and compelling basis for this this Court to find that the ends of justice will be well served by granting the motion to continue. 18 U.S.C. 3161 (h)(7)(A) and (B)(ii).

CONCLUSION

FOR THE REASON STATED herein and in the submissions provided to the Court with respect to the discovery, this motion for continuance is warranted and should be granted.

Respectfully submitted,

*Shirley Baccus-Lobel*
Shirley Baccus-Lobel
Law Office of Shirley Baccus-Lobel, PC
8350 Meadow Road, Suite 186
Dallas, Texas 75231
214.220.8460; 214.987.3169 (f)
sbl@lobellaw.com
Attorney for John Price

*Thomas W. Mills, Jr.*
Mills & Williams
5910 N. Central Expressway, St. 900
Dallas, Texas 75206-5141
214.265.9265; 214.363.3167 (f)
tmills@millsandwilliams.com
Attorney for Dapheny Fain

*Russell Wilson, II*
Law Office of Russell Wilson, II
1910 Pacific Ave., Suite 15100
Dallas, Texas 75201
469.573.0211
Attyrwilson@msn.com
Attorney for Kathy Nealy

*Cheryl Brown Wattley*
Cheryl Brown Wattley
Law Office of Cheryl B. Wattley
3737 Atlanta Street
Dallas, Texas 75215
214.882.0855
cheryl.brown.wattley@gmail.com
Attorney for Kathy Nealy

*Chris Monroe Knox*
Law Office of Chris Knox
900 Jackson St., Suite 650
Dallas, Texas 75202
214.741.7474; 214.747.7711 (f)
chrisknox@knoxcriminaldefense.com
Attorney for John Price

*Marlo P. Cadeddu*
Law Office of Marlo P. Cadeddu
3232 McKinney Ave., Suite 700
Dallas, Texas 75204
214.220.9000; 214.744.3015 (f)
mc@marlocadeddu.com
Attorney for Dapheny Fain

## CERTIFICATE OF CONFERENCE

In a recent conference call with the Court and all counsel, the prosecution

advised that the government is not opposed to a continuance.

*Shirley Baccus-Lobel*
SHIRLEY BACCUS-LOBEL

19

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2016 I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court.  The electronic case files system sent a "Notice of Electronic Filing" to the following individuals who have consented in writing to accept this Notice as service of this document by electronic means: AUSA's Walt Junker, Katherine Miller, and Nick Bunch, 3rd Floor, 1100 Commerce, Dallas, Texas 75242; and all other counsel of record.

*Shirley Baccus-Lobel*
SHIRLEY BACCUS-LOBEL