EXHIBIT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 3:14-Cr-293-M |
| | § | ECF |
| JOHN WILEY PRICE (1) | § | |
| KATHY LOUISE NEALY (2) | § | |
| DAPHENY ELAINE FAIN (3) | § | |

**REPLY TO GOVERNMENT'S RESPONSE [DOC. 259] TO THE DEFENDANTS' THIRD MOTION FOR CONTINUANCE [DOC. 258]**

The Defendants PRICE, NEALY, and FAIN, through counsel, submit for the Court's consideration this reply to the prosecution's response [Doc. 259], as modified, to the Defendants' unopposed third motion for continuance [Doc. 258]:

1. Ultimately, the record will speak for itself with respect to the pace, condition, and content of the discovery provided in this case, including the usability problems encountered with respect to document identification and sourcing, problems the government to a certain extent has acknowledged. As for volume, the Summation database is 7.5 terabytes and includes more than 5.77 million files. In addition to the discovery on Summation, there are in excess of 3.5 TBs of video and audio recordings and photographs, as well as valuables and materials too bulky to scan.

See Doc. 258-5. As noted in this proceeding, it is estimated that 1 TB can hold 85,000,000 pages of Word documents or 500 hours of film. Doc. 183 at 3, n. 1. Problems remain, particularly with respect to Production 4, as the government recognizes. The processing of Production 8 is incomplete.

2. Several issues in the government's response are already a matter of record, having been identified by the defense in previous pleadings.

(a) <u>Incompatibility of load files</u>

As pointed out in the Defendants' continuance motion [Doc. 258 at 5], one source of difficulty has been the incompatibility between Concordance load files and Summation. This problem was not recognized until late in the process. The prosecution's response implies that the fault for this lies with the defense, because the government was not made aware that the load files it produced would be used on Summation. Doc. 259 at 4. However, the government did know that Summation software would be used *before* a single document was loaded and processed by the coordinating discovery attorney – to be precise, by mid-September 2015.[1] Had

---

[1] Moreover, a flow of communication has existed between the prosecutors and the coordinating discovery attorney, including meetings between the government (prosecution and IT personnel) and the coordinating discovery attorney's staff. One such meeting occurred *even before* counsel for the Defendants received the Summation training necessary for their use of the discovery (November 2015). The meeting was for the express purpose of an on-site demonstration of the problems the coordinating discovery attorney was experiencing.

Page 2 of 12

the government then known that the Concordance load files would be incompatible with the Summation software, surely it would have "spoken up" in order to avert predictable problems. In any event, what seems clear is that the individual Defendants should not be held responsible for the technical problems which occurred.[2]

(b) Use of phrase "corrupted load files"

The Defendant's motion for continuance said the following with respect to load files which either did not work or did not work adequately: "This delay between production of discovery and accessibility of the discovery is due to the time required for processing and also is attributable in several instances to the condition of material received for processing by the PD." Doc. 258 at 7. This included "improperly coded load files, sometimes referred to as 'corrupted' files, meaning only that for whatever reason the load files were not usable." *Id.* at 7, n.5.

---

[2] The government again refers to "Concordance as requested by the defense." To the extent that there was any "selection," it was based on the fact that Defendant Campbell's retained counsel had Concordance litigation software and capacity.  Court-appointed counsel for Defendants Nealy and Fain agreed to the use of Concordance because that was the available capacity. Unbeknownst to Counsel, the government was apparently in plea negotiations with Defendant Campbell's counsel at the time initial discovery productions were made. Obviously, if and when a plea was negotiated, it would not be feasible for counsel to utilize a host platform maintained and controlled by Defendant Campbell's counsel. The entry of Campbell's plea would have necessitated a change in the procedures used for continued discovery production.

The pleading went on to observe that when this occurs, either the government must provide new load files (which it did in certain instances) or the coordinating discovery attorney must craft a solution (which also occurred in several instances and continues). Curiously, the government blames certain document identifier problems on the coordinating discovery attorney for having modified load files and, yet, modifications were necessarily made because the load files were not usable. The defense, rather than dwelling on blame issues, instead identified the sheer volume of discovery as the primary culprit with respect to the discovery problems encountered in this case [Doc. 258 at 16], not the least of which is the fact that nearly 2 years after indictment, the Defendants do not have a complete searchable database.[3]

(c) <u>Production of seized materials (Production 4)</u>

(i)   Counsel were provided, as has been repeatedly acknowledged, ten discs of seized documents in September 2014.[4] *E.g.,* Docs. 173-4, 237-2, 258-5.

---

[3] This is no small consideration.  There are millions of files in this case.  Until the database is complete, a search which has been conducted will need to be redone in order to complete the search.

[4] Ordinarily, use of the term "document" is intended to be all-inclusive.  In this instance, however, the reference is to actual hard-copy documents, not digitally stored and retrieved material. That material was produced subsequently and to some extent is still being processed.

(ii) The government's response, as modified,[5] states that it produced to each Defendant prior to indictment and then again in its first discovery production following indictment those documents seized from that defendant, "excluding bulky items, which include digital/electronic devices, and valuable items."[6] The government's first production of discovery material occurred in September 2014, in accordance with this Court's directive to begin discovery production prior to September 12, 2014. Doc. 32 at 2. Each defendant then received in discovery copies of her own seized documents (again) and also the documents seized from the other defendants (excluding with respect to all, the digital/electronic devices

---

[5] In its response, the government stated that "the defendants have had a copy of Production 4 for almost four years in a non-database format. Specifically, the government provided the vast majority of the contents of Production 4 to Defendants Price, Nealy, and Fain no later than October 2012, in searchable PDF files" (footnotes omitted). Doc. 259 at 2. The government has now modified that representation, stating: "The pre-indictment production to each defendant consisted only of that defendant's own documents seized from [no designation in original] during the execution of the search warrant (excluding bulky items, which include digital/electronic devices, and valuable items)." The government still contends that the "vast majority" of seized documents in Production 4 were provided previously in Production 1 and, to be clear, has abandoned this claim only with respect to the 2012 productions.

[6] To the extent that the government insinuates counsel should have been engaged in a search of these records (copies of their own records which had been seized), it should be noted that there were no charges pending at that time. Almost two years passed before an indictment was returned. To suggest counsel should have been conducting searches of these materials in anticipation of the preparation of a defense for charges not yet filed makes no sense. Ms. Nealy's seized documents were simply returned to her. The forfeiture proceeding against Mr. Price and Ms. Fain – cited by the government as the grounds for return of their seized documents - was ultimately stayed. Moreover, Mr. Price was represented by different counsel at that time and in that proceeding.

and contents). These were not in a searchable database.  These documents also bear the mark "GE" and represent a tiny fraction of the whole of the discovery, that is, approximately **24.4 gigabytes.**

(iii)   Thereafter, the government provided **Production 4**. In its response, the government maintains that the "vast majority" of documents in Production 4 simply replicate Production 1. Doc. 259 at 2. The government has described Production 4 as follows: "This material consists of **493 gigabytes** of material in Concordance format. Materials stamped with a "lB" bates number are those seized pursuant to search warrants, and items stamped with a **"GE"** came from the 1B materials and are likely to be used as **evidence in the Government's case-in-chief"** (emphasis added).[7]   However, there exists a substantial disparity in size between Production 1 [approximately 24.4 gigabyte] and Production 4 [approximately 458 gigabytes (or 493, according to the government)]. There are 1.4 million files in Production 4 (per Summation). The government persists in its claim that "the vast majority" of documents in Production 4 was provided previously in Production 1. However, the enormous disparity between the volumes of those two productions

---

[7] Whether the "GEs" produced are a complete set of those previously produced, or instead something more (or less) is not entirely clear.

[nearly ½ terabyte *vis-à-vis* 24.4 GBs] would appear to be at odds with that claim. It also bears repeating that these GE documents are a miniscule fraction of the whole of the discovery. Moreover, repeated production of (at least some) documents which the prosecution intends to use in its case-in-chief has scant relevance to questions about accessibility to the whole body of discovery. In any event, the government concedes that substantial problems exist with respect to Production 4.

3.  The government asks that the Court take into account Production 8 in its determination of the length of any continuance. It states that the defense has had access to this material (some of which has been returned) for a considerable period of time. The facts are these:

**(a)** The government states that in March 2015, it made Production 8 available for inspection and copying by defense counsel.  In fact, however, Defendant Price's effort to obtain this production was rebuffed. Counsel for Defendant Price was appointed on March 6, 2015.  On March 25, 2015 counsel received the government's letter that Production 8 was available.  At counsel's request, the technical/computer person assisting the defense contacted the prosecution in April, in response to the prosecutor's letter, in order to make arrangements to

obtain a copy of Production 8. The government, however, rebuffed this effort until "certain discovery issues" [still unspecified] were "settled" with defense counsel. This issue did not evolve further because, in May, the Public Defender was appointed as the coordinating discovery attorney and assumed responsibility with respect to this production and others.

**(b)** Moreover, although responsibility for processing Production 8 rested with the coordinating defense attorney, defense counsel in fact did make repeated efforts pursuant to Rule 16 to inspect and copy Production 8, to no avail until a copy was finally furnished to the defense in February 2016.[8]

**(c)** Finally, until Production 8 is fully loaded and accessible, it is not possible fully

---

[8] At one point, the government agreed to these repeated Rule 16 requests. In December 2015, all the devices were to be placed on a table for defense counsel to look at subject to the provisos that the defense could bring no equipment to the "examination" and no photographs could be made and none of the devices could be turned on. It is our understanding that these were agency constraints, not the prosecution's. That meeting was canceled after counsel notified the government that those arrangements were not acceptable. Additional requests to copy the material included in Production 8 were made by the defense in December of 2015. The government again refused these requests. Subsequently, in February 2016, the defense obtained a copy from the government. Digital contents must be processed in order to be searchable and usable and that process obviously takes time (considerable time where, as in Production 8, the volume is massive). Thus, other than each defendant's own computer, for example, we do not understand the government's claim that the defendants have had access to these digital device contents for a lengthy period. There have been differing accounts of the number of devices (from a minimum of 130), the contents of which are included in Production 8. While some of these devices belonged to a defendant and were returned, this production of digital material is far greater than that.

and reliably to assess whether there are issues and concerns with respect to that production. The government asserts that the defense has concerns now about Production 8. Doc. 259 at 3. The defense has only general concerns with respect to accessibility and usability due to the difficulties previously encountered.  At this juncture, those obtain principally to ongoing concerns about document identification and sourcing.[9] The defense does not have particular concerns at this time and would not be reluctant to voice them if it did.

5. The defense agrees with the government that in the event of a continuance, the deadlines for pretrial motions and responses also must be enlarged. Regarding pretrial deadlines generally, the defense has no objection to conferring with the government regarding scheduling, as the prosecution suggests.

---

[9] The processing of Production 8 may be nearing completion.  In addition, the coordinating discovery attorney continues to address and resolve document identification problems with respect to several productions.

Respectfully submitted,

| | |
|---|---|
| *Shirley Baccus-Lobel* | *Chris Monroe Knox* |
| Law Office of Shirley Baccus-Lobel, PC | Law Office of Chris Knox |
| 8350 Meadow Road, Suite 186 | 900 Jackson St., Suite 650 |
| Dallas, Texas 75231 | Dallas, Texas 75202 |
| 214.220.8460 | 214.741.7474 |
| 214.987.3169 (f) | 214.747.7711 (f) |
| sbl@lobellaw.com | chrisknox@knoxcriminaldefense.com |

Attorneys for John Price

| | |
|---|---|
| *Cheryl Brown Wattley* | *Russell Wilson, II* |
| Law Office of Cheryl B. Wattley | Law Office of Russell Wilson, II |
| 3737 Atlanta Street | 1910 Pacific Ave., Suite 15100 |
| Dallas, Texas 75215 | Dallas, Texas 75201 |
| 214.882.0855 | 469.573.0211 |
| cheryl.brown.wattley@gmail.com | Attywilson@msn.com |

Attorneys for Kathy Nealy

| | |
|---|---|
| *Thomas Mills* | *Marlo P. Cadeddu* |
| Mills & Williams LLP | Law Office of Marlo P. Cadeddu |
| 5910 N. Central Expressway, Suite 980 | 3232 McKinney Ave., Suite 700 |
| Dallas, Texas 75206-5141 | Dallas, Texas 75204 |
| 214.265.9265 | 214.220.9000 |
| 214.363.3167 (f) | 214.744.3015 (f) |
| tmills@millsandwilliams.com | mc@marlocadeddu.com |

Attorneys for Dapheny Fain

CERTIFICATE OF SERVICE

    I hereby certify that the foregoing document was electronically submitted to the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court.  The electronic case files system sent a "Notice of Electronic Filing" to the following individuals who have consented in writing to accept this Notice as service of this document by electronic means: AUSA's Walt, Katherine Miller, and Nick Bunch 3rd Floor, 1100 Commerce, Dallas, Texas 75242, and all counsel of record.

                                        */s/ Shirley Baccus-Lobel*
                                        SHIRLEY BACCUS-LOBEL