IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Cause No. 3:14-CR-293-M |
| | § | ECF |
| JOHN PRICE, | § | |
| KATHY NEALY, and | § | |
| DAPHENY FAIN | § | |

<u>DEFENDANTS' RESPONSE TO THE PROSECUTION'S MOTION TO
IMPOSE ADDITIONAL PRETRIAL DEADLINES [Doc. 272]</u>

The Defendants submit for the Court's consideration this response to the prosecution's motion requesting that the Court impose additional pretrial deadlines.

1.  In its order granting a continuance in this case, the Court directed the parties to file agreed pretrial deadlines for (1) pretrial motions and responses; (2) designation of experts, responsive experts, as well as objections to experts (*Daubert* motions); and (3) pretrial materials (proposed voir dire questions, limine motions, proposed jury instructions, and witness and exhibit lists).   Doc. 269 at 5-6.   This joint submission was filed July 15, 2016 (Doc. 271). The prosecution requests these additional pretrial deadlines. Doc. 272:

**<u>A Deadline for Submission of Any Additional Motion for Continuance</u>**

2.  The government proposed January 9, 2017 for the parties' submission of pretrial

materials (witness lists, exhibits, motions in limine, proposed voir dire questions and jury instructions), and the defense concurred. The prosecution now requests a deadline of January 2, 2017 for the filing of any additional motion for continuance in order to avoid disclosure of its witness list and exhibits at a time after which the trial date could change (as a consequence of a trial continuance based on a motion filed after January 2nd). The government also seeks this deadline to avoid the possibility of any continuance after disclosure of completed juror questionnaires. Doc. 272 at 2-3.[1] This motion is necessary, the government urges, because the Defendants "may already be contemplating a further continuance of this matter. In particular, in response to the government's proposed pretrial schedule, the defendants specifically noted that their agreement to a pretrial materials deadline of January 9, 2017, was not a concession that it was possible to review the discovery and prepare for trial by the Court's current setting." *Id.* at 1.

3.  The Defendants do not oppose the government's request for the January 2nd

---

[1] The government's motion mistakenly states that "the [parties'] proposed pretrial schedule sets January 9, 2017, as the day the completed questionnaires would be disclosed to the parties." Doc. 272 at 3. However, this deadline is not included in the joint (proposed) pretrial order (Doc. 271). The Court did not request an agreed deadline for that disclosure. The parties did discuss the matter. The government preferred release of the questionnaires on January 9th.  The defense is not opposed to the request should the Court conclude this is an acceptable deadline.

deadline for any additional motion for continuance, provided it applies only to a motion based upon known circumstances.  It would be unreasonable to apply a time restriction for a motion for continuance to unknown circumstances. Unknown circumstances which would require a trial continuance and which arise near the trial date are uncommon but do occur and are unpredictable for the Defendants – *e.g.*, a superseding indictment; serious illness of a party; and myriad other possibilities. To restrict motions on unknown grounds (which may not even exist at this time) is inappropriate.

4.  It is important to note that even known circumstances may not be fully known, particularly in this case. For example, the volume of material the defense must contend with, while a known circumstance to some extent, is also an ever-changing circumstance, as the history of productions in this case reveals. Two additional productions of data were made only very recently (July 22, 2016). This added volume will not be known until the coordinating discovery attorney has acquired the material and loaded it to the server. And as more fully addressed below, the number of files on Summation was 5.77 discrete files at the time the Defendants filed the last motion for continuance. That number is now 7.l million, even before the new material is loaded.

5.  The defense is ***fully mindful*** that the Court "expect[s] all parties to proceed to

trial on the date set" [Doc. 269 at 5] and has proceeded with diligence and will continue to do so. That said, the defense can only do what it can do. And in fairness to these Defendants, and consistent with the fiduciary obligations to those clients, counsel cannot pretend it can do that which cannot be done. As the Court has noted, the case involves a "staggering volume of discovery" and **"[a]s of June 2016, a significant portion of the discovery materials had only recently become accessible to Defendants in a usable format**." Doc. 269 at 2 and 3.  The Court also noted that this "staggering volume of discovery" includes "approximately **7.5 terabytes of data**, comprising **more than 5.77 million discrete files**, which are stored on a server maintained by the Federal Public Defender's Office" and that in addition to this data, "there are **more than 3.5 terabytes of video and audio recordings and photographs, as well as recordings of Commissioners' Court proceedings for a decade**." *Id.* at 2 (emphasis added).  As of this date, as the coordinating discovery attorney recently advised, the total number of **files on the server increased from 5.77 million to 7.1 million.** Since then, as noted, the prosecution has provided additional files and in the future may well provide more files.

6.  Other considerations are at play as well. Although substantial *Jencks* material has

now been provided, exhibits expressly referenced and incorporated as part of the file

with respect to grand jury testimony and interview reports, as well as proffers

expressly referenced, are **not included** (with one exception) in the material provided

to the defense. And, significantly, the defense still does not have the Special Agent's

Report, even though counsel believed this would be provided, at least in a somewhat

redacted form. That information is critical to an understanding of the charge that

these individuals allegedly *obstructed the IRS.*[2]

7.   In addition, a number of important issues remain unresolved. This includes but is

not limited to sourcing documents (including those described as the primary

documents for the government's case in chief), many of which were extracted from

their source and the document groupings of which they were a part, possibly years

ago. Sourcing documents, and determining their relatives is obviously of critical

importance to authenticity and admissibility at trial. A number of other issues remain

as well (*e.g.,* determining whether all of the so-called "filtered documents" have

been provided).

8.   To summarize, we do not oppose the government's requested deadline, provided

---

[2] We are not asserting a legal obligation to produce the material now - rather, an expectation
based on representations made *and* the need for tools which can facilitate the navigation of this
astounding volume of material, as it relates to this charge.

it does not unreasonably preclude consideration of circumstances which are unknown at this time.   In any event, the defense believes any need to seek a continuance based upon its inability adequately to address the volume of material produced in discovery within the current time frame and prepare for trial will be evident and, accordingly, voiced before January 2, 2017, at least to the extent that the ever-increasing volume is known.

## A Deadline for Production of Reciprocal Discovery

9.  The prosecution asks that the Court impose a deadline for reciprocal discovery. Respectfully, this request is based on no articulated authority. To the extent that it relies upon an interpretation of Rule 16, it is without a basis in the language of that rule. Rule 16 (b)(1) provides as follows with respect to reciprocal discovery:

(b) Defendant's Disclosure.

(1) Information Subject to Disclosure.

(A) Documents and Objects. If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:

**(i) the item is within the defendant's possession, custody, or control**;

**and**

**(ii) the defendant intends to use the item in the defendant's case-in-chief at trial**.

(emphasis added)

As the highlighted excerpt from the rule illustrates, there are critical aspects to a defendant's obligation to provide discovery.  First, the defendant must have determined whether to use the item in her case-in-chief.  This language means that the defendant must have determined that she intends to use the material as an exhibit. It is perplexing that the government, having had possession of the vast majority of documents pertaining to the Defendants' business and personal matters for years, has repeatedly voiced the expectation that any Defendant would have determined which items she intended to use in her case-in-chief at trial.[3]

10.     In June 2011, the government seized documents from the Defendants' homes,

---

[3] Frankly, it seems somewhat odd, even burdensome, to require a Defendant to produce case-in-chief exhibits at the same time as the government, but that is what the local rules require and defendants must of course abide by those rules.  It is particularly burdensome in a case where the government's presentation of its case will take 3 months, after which the defense presents its case. The result is that the government provides its case-in-chief exhibits not long before the presentation of its case begins, whereas the defense must present its case-in-chief documents at the same time, many months prior to presentation of its case.

offices, and a storage facility.  Documents were obtained by other means, including an extraordinary (and probably unprecedented) number of subpoenas, even before that – and since. For years, a large volume of the documents obtained have been in the custody, control and possession of the government.  In July 2014, this indictment was returned.  On September 9, 2014, pursuant to the Court's directive that the government start providing the defendants with discovery, it produced ten discs of materials in .pdf format that had been seized from the defendants. Interestingly, the reference line in this letter stated: "Government's Production of Discovery and Request for Reciprocal Discovery."  So, even before counsel had any opportunity even to begin its examination of the documents provided, the prosecution's reference line included a request for reciprocal discovery. Included within that first production, although not explained as such, were items the government later described as "hot docs."  These "GE" documents were sequentially bates numbered but nothing identified the source of the document, and the government has acknowledged that these documents were "extracted" from larger bodies (groupings) of documents. Thus, while the prosecution claimed that production of the "hot docs" provided the defense with "ready access to the [seized] documents that [it] view[ed] as being some of the most important and relevant to [its] case," the manner in which they were produced did not allow defense counsel to confirm the authenticity of the documents,

their seizure from the designated defendant, or their locale at the time of seizure (*i.e.*, from which place and in which location at that place and from which group of documents the item was "extracted" – *e.g.*, from X's desk in X's  business  office, in a file labeled "zzzzzz" seized from the lower right-hand drawer).

11.    Since that initial production in September 2014, the government has made (and continues to make) multiple productions of discovery materials, the most recent being a few days ago.  Each letter the government has written providing notice of a production of materials has included both in the reference line and in closing a request for reciprocal discovery.  Each letter concludes with the following language: "Additionally, please take note that the Government is requesting reciprocal discovery before trial pursuant to Federal Rule of Criminal Procedure 16(b)(1). As you know, Rule 16(c) creates a continuing duty to disclose such material."

12.    The Defendants are incredulous with respect to these subsequent requests, especially in light of the continuing production of literally millions of pages of material. The questionable nature of the continued requests is underscored by the government's position that it could not yet identify which documents it intends to use as exhibits.[4]  The government has been working on this case, presumably with a

---

[4] The government's obligation, as the proponent of a criminal accusation, is to produce to the defendant all data which could be material. Rule 16 (a)(E)(i): "the item is material to preparing the defense" *or* "the government intends to use the item in its case in chief at trial; *or* "the item was obtained from or belongs to the defendant." *Id.* at (ii) and (iii).  A defendant's discovery

team of agents, since at least 2010.  It has been gathering documents throughout that time period and continues to do so.  Presumably the government has been reviewing and indexing the documents as they were received.   Unlike the defendants, the government did not receive terabytes of data to review and analyze in a short period of time (short in relation to the task).  If the government, with a team of agents and assistants, multiple Assistant United States Attorneys and at least six years working on this case cannot yet identify its exhibits, what is the possible basis on which the government could have a reasonable expectation that these Defendants have identified their exhibits?

13.   In response to these unremitting demands, Defendant Fain expressed frustration that those demands were unwarranted, in that it was not yet possible to determine what documents would be used in her case in chief. However, Defendant Fain did designate general categories.  Defendant Nealy noted the objections voiced in this response and also designated as reciprocal discovery general categories, with a caveat that upon review of the subpoenaed records, she may have additional

---

obligation is much more narrow, that is, production of the items it will use in its case-in-chief, precisely the category the government has insisted it cannot produce at this time because it would have to "sift" through millions of documents to do so.  Thus, the defense has been forced to expend 100s of hours searching for documents specifically referenced in the indictment and which, it is reasonable to assume, are at the government's fingertips. Equally confounding is the government's position in this motion that it should not have to identify its exhibits when there might be another continuance, even though the Rule expressly requires it to do so.

categories of documents to identify. It is at least likely that Defendant Price's exhibits will include these general categories: County of Dallas documents and data, and business documents and data, which are included in the discovery and which relate to the RFPs and RFQs referenced in the indictment (as well as the "Inland Port").

14.     The Defendants understand the obligations of the rule but are not yet able to determine which documents will be used in their cases-in-chief at trial. **Significantly, the Defendants have agreed to provide defense exhibits 7 weeks prior to trial (January 9, 2017), a time which likely is almost 5 months prior to the presentation of the defense case.** It goes without saying that the defense compilation of its exhibits will be an ongoing process before *and after* January 9, 2017 and of course during trial as the government presents its case.

15.     The government's request for a reciprocal discovery deadline should be denied.

## A Deadline for Defense Witness Statements

16.     Unless our recollection is mistaken, the government has agreed that any *Jencks* material which has not been produced will be produced well in advance of the trial. The government's early disclosure of *Jencks, Giglio* and *Brady* material recognizes that its investigation of many years, including use of the grand jury, has produced a

volume of statements which could require repeated interruption of the trial were the material not provided early.

17.   The defense obligation to produce witness statements is derived from Rule 26.2, F.R.Crim.P., which provides:

> (a) Motion to Produce. After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject of the witness's testimony.

18.   The government's request is unreasonable, even without regard to the constraints of the rule. As we have noted previously, the normal progress of a federal criminal case is receipt and review of discovery, followed by such independent investigation as may be necessary, then motions and responses, and finally preparation of pretrial materials and trial preparation. In this case, however, the continuing receipt of discovery and its review is ongoing and will be ongoing for some time to come.  An expectation that the defense will be in a position to produce witness statements prior to commencement of the government's case in chief (or should do so), is unfounded and also unreasonable.  It is unreasonable because it

puts the horse before the cart, disclosure of defense material before the offense has even commenced.

<u>CONCLUSION</u>

For the reasons stated, the Defendants have no objection to the government's proposed deadline for any additional motion for continuance, provided its application is limited to known circumstances. In all other respects, the motion should be denied.

Respectfully submitted,


<u>*Shirley Baccus-Lobel*</u>
SHIRLEY BACCUS-LOBEL
A Professional Corporation
8350 Meadow Road, Suite 186
Dallas, Texas 75231
214.220.8460
sbl@lobellaw.com
Attorney for John Price


<u>*Thomas W. Mills, Jr.*</u>
Mills & Williams
5910 N. Central Expressway, Suite 900
Dallas, Texas 75206-5141
214.265.9265
214.363.3167 (f)
tmills@millsandwilliams.com
Attorney for Dapheny Fain

<u>*Cheryl Brown Wattley*</u>
Law Offices of Cheryl B. Wattley
3737 Atlanta Street
Dallas, Texas 75215
214.882.0855
Cheryl.brown.wattley@gmail.com
Attorney for Kathy Nealy

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2016, the foregoing document was electronically submitted to the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to the following individuals who have consented in writing to accept this Notice as service of this document by electronic means: AUSA's Walt Junker, Katherine Miller, and Nick Bunch 3rd Floor, 1100 Commerce, Dallas, Texas 75242, and all counsel of record.

<u>/s/ Shirley Baccus-Lobel</u>
SHIRLEY BACCUS-LOBEL